# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| BRETT WATERBURY,<br><br>    Plaintiff,<br><br>vs.<br><br>PROGRESSIVE NORTHERN<br>INSURANCE COMPANY,<br><br>    Defendant. | No. C15-0112-LTS<br><br>**ORDER REGARDING PROPOSED<br>JURY INSTRUCTIONS AND<br>CHOICE OF LAW** |

_____

Attached to this order is my preliminary set of jury instructions. These instructions are a combination of the parties' proposed instructions and my standard civil jury instructions. Also incorporated into the preliminary set of jury instructions is my ruling on the parties' choice of law dispute, which is addressed below.

## *I. BACKGROUND*

This case involves a boat insurance policy. It is undisputed that the plaintiff, an Iowa resident, had a boat and that the defendant provided an insurance policy for the boat. Plaintiff alleges that in April 2014, the boat was damaged in an accident in Missouri. Plaintiff filed a claim with defendant. Defendant denied coverage, finding that the damage occurred due to normal wear and tear, which is not covered, rather than an accident.

On May 26, 2015, plaintiff filed this case in the Circuit Court for Camden County, Missouri (the location of the alleged accident). In his two-count petition, plaintiff

alleged breach of contract and vexatious refusal to pay an insurance claim. Doc. No. 1-2 at 3-5. On July 13, 2015, defendant removed the case to the United States District Court for the Western District of Missouri. Doc. No. 1.[1] On September 10, 2015, defendant filed a motion to transfer venue to this court. Doc. No. 16. Plaintiff did not resist the motion. On October 16, 2015, United States District Judge Nanette K. Laughrey transferred the case to this court. Doc. No. 21.

Plaintiff then retained Iowa counsel. Doc. No. 26. On November 19, 2015, plaintiff filed a motion to transfer venue back to Missouri. Doc. No. 32. Plaintiff argued that his previous counsel had erred in failing to resist the motion to transfer venue and that several factors weighed in favor of returning this case to Missouri. Doc. No. 32-1 at 2-5. Chief Judge Linda R. Reade, to whom this case was initially assigned upon its arrival, denied the motion on January 4, 2016. Doc. No. 36 at 4-5. Judge Reade stated:

> When evaluating the interests of justice, court can consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." Terra Int'l, 119 F.3d at 696. Progressive argues that several of these factors support denying the Motion, stating that this case should be heard in Iowa because "this case revolves around an Iowa insurance contract dispute between an Iowa resident and a business operating in Iowa" and that the costs of litigation are similar in either forum. *See* Brief in Support of the Resistance at 7. Waterbury argues that because three witnesses live in Missouri, it would be more expensive to have to travel to Missouri for depositions or for those witnesses to travel to Iowa for trial. However, there are at least four other witnesses, including Waterbury himself, located in Iowa. Therefore, the comparative costs appear substantially similar. Waterbury also argues that he preferred the case to remain in Missouri.

---

[1] Removal was based on diversity of citizenship pursuant to 28 U.S.C. § 1441(b). It is undisputed that the plaintiff is citizen of Iowa while the defendant, as a Delaware corporation headquartered in Ohio, is a citizen of those two states.

2

Although "[i]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking transfer . . . typically bears the burden of proving that a transfer is warranted," that maxim does not apply to the instant Motion because Waterbury already had a chance to resist the initial transfer of this case. *In re Apple*, 602 F.3d at 913 (quoting *Terra Int'l, Inc.*, 119 F.3d at 695) (first alteration in original). The fact that his former counsel failed to resist Progressive's Motion to Transfer Venue and to inform Waterbury about such motion does not result in this court analyzing the Motion as a resistance to Progressive's initial motion. Instead, Waterbury must demonstrate that transfer of this case is appropriate, not that the previous transfer was inappropriate. The court finds that Waterbury has not met this burden. The convenience of the parties, the convenience of the witnesses and the interests of justice do not favor transfer. Additionally, there is nothing in the instant scenario that constitutes "impelling or erroneous circumstances" warranting re-transfer of the case. *See In re Cragar Indus., Inc.*, 706 F.2d at 505 (quoting *Koenig*, 290 F.2d at 173 n.11).

Doc. No. 36 at 4-5.

## II. CHOICE OF LAW

The parties dispute whether Iowa or Missouri substantive law applies to this case. The parties agree that the insurance contract does not contain a choice of law clause. Doc. No. 42 at 4; Doc. No. 41 at 3. Plaintiff argues the court should apply Missouri law, stating:

> Waterbury left his boat in Missouri during the boating season that year. Plaintiff's Ex. 12 p. 4 "Brought IV Back Down A Couple Weeks Ago To Lake Of The Ozarks." The evidence should show that Waterbury has a second residence on or near Lake of the Ozarks, thus the insured risk was principally located in the State of Missouri because that's where he used it. Missouri law applies.

Doc. No. 41 at 3. Defendant advocates for the application of Iowa law, stating:

> When parties do not select the law to apply to contract, Iowa applies the "most significant relationship" test of the Restatement (Second) of Conflict

> of Laws § 188. *Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg. Co.*, 23 F.Supp.2d 975, 1002 (N.D. Iowa 1998). . . . Under the most significant relationship rule, the appropriate law is that of the state of Iowa. The place of contracting and negotiation is Iowa. The policy is an Iowa policy. The place of performance is Iowa. The policy and renewals were mailed to Waterbury in Iowa. The agent and office are located in Iowa. Waterbury lives in Iowa. The subject matter of the contract, the watercraft, was located in Missouri at the time of the incident. All factors, except the location of the watercraft at the time of the incident support Iowa law. The most significant relationship is with Iowa.

Doc. No. 42 at 4-5.

### A. Standard

> A court makes four analytical steps in resolving a choice-of-law issue: (1) characterize the nature of the cause of action; (2) decide if a conflict of law exists; (3) identify the law that applies based on the forum state's choice-of-law principles; and (4) determine which state's substantive law applies based on the application of the forum state's choice-of-law principles. *See Jackson v. Travelers Insurance Co.*, 26 F.Supp.2d 1153, 1156–57 (S.D. Iowa 1998).

*Weitz Co., LLC v. Lexington Ins. Co.*, 982 F. Supp. 2d 975, 982 (S.D. Iowa 2013), *aff'd*, 786 F.3d 641 (8th Cir. 2015).

> Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship. *Klaxon Co. v. Stentor Elec. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021–22, 85 L. Ed. 1477 (1941).

*Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991).

### B. Analysis

The first question is the character of the case. As set out above, this case presents two basic issues: (1) did defendant breach the insurance contract by failing to pay

plaintiff's claim, and, if so, (2) was the breach vexatious? Second, I must I decide if a conflict of law actually exists. Under Missouri law:

> Under Missouri law, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by *the* defendant; and (4) damages suffered by the plaintiff." [*Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)].

*Smith Flooring, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 941 (8th Cir. 2013). An insured can recover for vexatious denial if:

> In any action against any insurance company to recover the amount of any loss under a policy…if it appears from the evidence that such company has refused to pay such loss without reasonable cause, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee. . . . Mo. Rev. Stat. § 375.420.

*Axis Specialty Ins. Co. v. New Hampshire Ins. Co.*, 2016 WL 4257369, at *3 (W.D. Mo. 2016).

> Under Iowa Law:

> To prevail on a breach of contract claim, [plaintiff is] required to prove: (1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [plaintiff] has performed all the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular way, and (5) that plaintiff has suffered damages as a result of defendant's breach. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). Iowa does not have an exact analog to Mo. Rev. Stat. § 375.420. Instead, under Iowa common law, an insured may recover additional damages if the insurer denies a claim in bad faith:

5

> To prevail on a claim for an insurer's bad faith, a plaintiff must prove "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) that the insurer knew, or had reason to know, that its denial was without basis." *McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323, 329 (Iowa 2002) (citation omitted) (emphasis added).[] "The first element is objective; the second is subjective." *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002) (citation omitted).[] "A reasonable basis exists for the denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact of law." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005) (citations omitted). "A claim is 'fairly debatable' when it is open to dispute on any logical basis … [or,] [s]tated another way, if reasonable minds can differ on the coverage-determining facts or law[.]" *Id.* (citations omitted). Thus, so long as the coverage issue is "fairly debatable," it is immaterial if the insurer's coverage position is ultimately found to lack merit. *Id.* The question of whether a claim is fairly debatable "can generally be decided as a matter of law by the court." *Id.*

*Liberty Mut. Ins. Co. v. Pella Corp.*, 753 F. Supp. 2d 798, 801 (S.D. Iowa 2009), *aff'd*, 650 F.3d 1161 (8th Cir. 2011).

Thus, while Missouri law concerning breach of contract is substantially similar to Iowa law, there is a significant difference between the claim of vexatious refusal to pay under Missouri law and the claim of bad faith failure to pay under Iowa law. Missouri's law, Mo. Rev. Stat. § 375.420, has only one element – that the insurance provider did not have reasonable cause to deny coverage. Under Iowa law a plaintiff must prove two elements to show bad faith: (1) that the insurance provider had no reasonable basis to deny coverage; and (2) the insurance provider either knew of the lack of a reasonable basis, or recklessly disregarded that knowledge. *See Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 475 (Iowa 2005). Because Iowa's law of bad faith has an additional element not contained in Mo. Rev. Stat. § 375.420, there is a true conflict such that further analysis is required.

Third, I must apply the forum state's choice-of-law principles. In this case, the forum is Iowa. *See Stults v. Symrise, Inc.*, 989 F. Supp. 2d 735, 756 (N.D. Iowa 2013) ("[I]n a diversity action such as this, to determine what state's law applies to the [plaintiffs'] claims, I must use the choice-of-law rules of the forum state, in this case, Iowa."). In that case, Judge Bennett set out Iowa's choice-of-law standard for torts:

> As the Iowa Supreme Court has explained: ["]Iowa has abandoned the *lex loci delicti* rule in which the law of the place of injury governs every issue in a tort action. We now follow the Restatement [(Second) of Conflict of Laws]'s "most significant relationship" methodology for choice of law issues.["] *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987); *Berghammer v. Smith*, 185 N.W.2d 226, 231 (Iowa 1971). The theory behind this approach is that rather than focusing on a single factor, "the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation." *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968). *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). More specifically still, the court explained that, for a tort case, such as the one now before me[,] [t]he most significant relationship test is that which is stated as follows in the Restatement (Second) Conflict of Laws: (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6. (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue. Restatement (Second) Conflict of Laws § 145 (1971)

*Id.*, at 756-757. However, the choice-of-law standard in the context of a contract is articulated differently:

> While *Veasley* stands for the proposition that we will generally apply section 145 of the Restatement (Second) in tort cases, it does not provide controlling

7

> authority for [contract cases]. *Veasley* was a tort action brought by an employee against a vehicle owner for the negligence of a coemployee. *Id*. *Veasley* did not involve the question of which conflict of laws rule should be applied in the context of a workers' compensation carrier's subrogation claim in an action involving recovery of insurance proceeds from underinsured and uninsured insurance carriers. We have applied section 188 of the Restatement (Second) in a number of contractual contexts. For instance, in insurance cases generally, we have applied section 188. *See, e.g., Gabe's Constr. Co. v. United Capitol Ins. Co.*, 539 N.W.2d 144, 146 (Iowa 1995); *Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980).

*Moad v. Dakota Truck Underwriters*, 831 N.W.2d 111, 118 (Iowa 2013). Section 188 states:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) Conflict of Laws § 188.

Thus, the final question I must consider is which state, Iowa or Missouri, has the most "significant relationship" to the action based on the factors set out in Section 188. Each side makes a rather perfunctory argument as to why that party's preferred state has

8

the most significant relationship. Plaintiff relies on the fact that the alleged accident occurred in Missouri, which is where the boat was used. Defendant argues that Iowa law should apply because the plaintiff resides in Iowa, the policy was issued in Iowa and the issuing agent is in Iowa.

In determining which state has the most significant relationship, I first consider the places where the contract was negotiated and consummated. Here, the contractual relationship between these two parties is defined by the insurance policy. The title of policy is "*Iowa* Boat and Personal Watercraft Policy." Defendant's Exhibit B at 1 (emphasis added).[2] As argued by defendant, and not contradicted by plaintiff, "[t]he place of contracting and negotiation is Iowa. The policy is an Iowa policy. . . The policy and renewals were mailed to Waterbury in Iowa. The agent and office are located in Iowa." Doc. No. 42 at 5. The fact that the boat was in Missouri at the time of accident is incidental. The relationship between the parties was created in Iowa and centered in Iowa.

Next, I must consider the place of the performance and the location of the subject matter of the contract. Plaintiff states that the boat was docked in Missouri and the alleged accident occurred in Missouri, so Missouri is the place of performance and the location of the subject matter. In support of his argument, plaintiff cites *Gabe's Const. Co. v. United Capitol Ins. Co.*, 539 N.W.2d 144 (Iowa 1995). In that case, a Minnesota business purchased an insurance policy in Minnesota to cover a venture in Iowa. After an accident occurred, the Iowa Supreme Court affirmed the application of Iowa law to the dispute. However, the policy at issue in that case was purchased specifically to cover the activity that was occurring in Iowa. The Iowa Supreme Court stated:

---

[2] The parties' trial exhibits have not been filed on the docket. However, hard copies have been provided to the court, and during the final pretrial conference on September 2, 2016, the parties agreed to pre-admit all exhibits. Accordingly, I have considered them in deciding these issues.

> We conclude Iowa has the most significant relationship to the transaction and the parties. The Restatement provides additional guidance for contracts of fire, surety or casualty insurance: The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship. . . . Restatement (Second) of Conflict of Laws § 193 (1971). Liability insurance is one of the various kinds of casualty insurance. *Id.* cmt. a.

*Gabe's Const. Co.*, 539 N.W.2d at 146–47.

Here, by contrast, there is no evidence that the parties intended or expected Missouri to be the "the principal location of the insured risk during the term of the policy." Defendant issued an Iowa insurance policy to an Iowa resident to cover an Iowa boat. While plaintiff certainly retained the right to use the boat outside of Iowa,[3] his decision to take the boat to Missouri was a unilateral one. Thus, while the alleged accident occurred in Missouri, it similarly could have occurred in any other state in which plaintiff elected to use the covered boat. This does not change the fact that the place of performance and the location of the subject matter of the contract was Iowa.[4]

Finally, I must consider the location of the parties. Plaintiff resides in Iowa and the covered boat is in Iowa for at least half of every year. Defendant is a Delaware corporation headquartered in Ohio, but sold and served the policy through an Iowa agent. No party or agent in Missouri has any relationship to the insurance contract at issue.

---

[3] Defendant does not appear to argue that any policy term or exclusion prohibited plaintiff from using the boat in other states.

[4] It is worth noting that according to Plaintiff's Exhibit 12, the boat was in Iowa for at least 50 percent of each year.

Based on the forgoing, I find that Iowa has, by far, the most significant relationship to this case. Thus, and in accordance with Iowa's choice-of-law principles, Iowa contract law will apply.[5]

### III. JURY INSTRUCTIONS

Because Iowa law applies to this case, I have made several changes to the parties' proposed jury instructions (Doc. No. 43). Specifically, I have adopted language substantially similar to defendant's proposed instructions regarding breach of contract and bad faith. I have not adopted plaintiff's proposed instructions regarding vexatious refusal to pay because they are not consistent with Iowa law.

Additionally, I have not included an instruction regarding evidence offered for a limited purpose because neither party has indicated what such evidence may be. If either party seeks to admit evidence that should be used for a limited purpose, the party should so notify me at the time so I can make an appropriate ruling and, if necessary, instruct the jury accordingly.

---

[5] I also note that Iowa law would apply even if this was a tort case. The Iowa Supreme Court has held that the place of injury is of minimal significance when compared to the other relevant factors. *See Estate of Pigorsch ex rel. Martin v. York Coll.*, 734 F. Supp. 2d 704, 713 (N.D. Iowa 2010):

> The Iowa Supreme Court has recognized that, among the § 145(2) "contacts," the "place where the injury occurred" . . . has little importance, at least where the state that is the place of injury has no other interest in the case. *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987).

This has been the position of the Iowa state courts for over 40 years. *See Berghammer v. Smith*, 185 N.W.2d 226, 231 (Iowa 1971) (applying Minnesota law to a loss of consortium claim arising out of an auto accident that occurred in Iowa between a Minnesota driver/plaintiff and an Illinois driver/defendant). Thus, while the alleged accident here occurred in Missouri, that fact would be of little significance to the choice-of-law analysis, even in a tort case.

I have not included the parties' proposed "Impeachment" instruction, as I believe it would unnecessarily complicate the case and confuse the jury. My Instruction No. 6, regarding weight of the evidence, adequately instructs the jury regarding the evaluation of witness testimony. Also, I have included only a portion of the "Corporations Bound" instruction. The parties have not made me aware of any dispute as to whether the defendant's agents were acting on its behalf. Absent such a dispute, additional explanation about the relationship between a corporation and its employees would only confuse the jury. Thus, I agree with defendant's objection to much of Proposed Instruction No. 11A. I have condensed the parties' proposed instructions regarding corporations into one "Agency" instruction. If plaintiff believes further clarification is necessary after the evidence has been received, he may raise the issue before the jury deliberates.

## IV. CONCLUSION

1. For the reasons set forth herein, the substantive law of the state of Iowa will apply to this case.

2. Each party shall file a response to the attached preliminary jury instructions by no later than 3:00 p.m. on Tuesday, September 13, 2016. The responses shall include reference to any typographical errors as well as any substantive suggestions and objections. **A response is required even if a party has no objections to the attached instructions**. Any objections not included in a party's timely response will be deemed waived.

**IT IS SO ORDERED.**

**DATED** this 7th day of September, 2016.

                         _____
                         LEONARD T. STRAND
                         UNITED STATES DISTRICT JUDGE